# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-cr-418 (RDM)** |
| **v.** | : | |
| | : | |
| **ERIC J. BOCHENE,** | : | |
| | : | |
| **Defendant** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence defendant Eric J. Bochene to 90 days' incarceration and one year of supervised release. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

### I.       Introduction

Defendant Eric J. Bochene, a 52-year-old former long-haul truck driver from northern New York state participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9

Bochene pleaded guilty to violating 18 U.S.C. § 1752(a)(1). The government's recommendation is supported by Bochene's actions on January 6, including his (1) striking a window of the Capitol with a large rectangular object at least four times while unsuccessfully breaking the window; (2) crawling through a broken window adjacent to the Senate Wing doors and entering the Capitol one minute after the Senate Wing doors and adjacent windows were first breached by other rioters; (3) traveling inside the Capitol, from the Senate Wing door lobby to the Brumidi Corridor, Ohio Clock Corridor, the hallway outside the office of the Majority Whip of the United States Senate, and the Senate Carriage Doors foyer, for approximately 17 minutes; (4) boasting about being one of the first people to enter the besieged building during a telephone call and on social media; and (5) characterizing the riot of January 6 as a "false flag" operation on social media.

The Court must also consider that Bochene's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed.

Additionally, as the Court is aware, Bochene failed to respond to this Court's orders, particularly the order issued July 4, 2023, resulting in the issuance of an arrest warrant on July 18, 2023, and Bochene's arrest on August 2, 2023.

Here, the facts and circumstances of Bochene's criminal activity support a sentence of 90 days' incarceration, which will amount to a time-served sentence, and one year of supervised release in this case.

---

million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Statement of Offense. ECF No. 67.

*Defendant Eric J. Bochene's Role in the January 6, 2021 Attack on the Capitol*

Beginning on January 5, 2021, Bochene traveled from New Hartford, New York to Washington, D.C., arriving at approximately 12:31 a.m. on January 6, 2021.  At approximately 2:12 p.m. that day, Bochene, wearing a gray ski-type cap and a gray zip-up hooded sweatshirt was captured on video on the Upper West Terrace of the United States Capitol. In his hands, he carried a large rectangular object that he used to swing at a window of the Capitol at least four times; his efforts did not break the window.  *See* Images 1-5 below, in which defendant Bochene is circled in red, and Video Exhibit 1.

Image 1



Image 2



Image 3



Image 4



Image 5



At approximately 2:14 p.m., approximately one minute after the Senate Wing doors and adjacent windows of the Capitol Building were first breached by other rioters within a few feet of Bochene, circled in red, was captured on United States Capitol Police ("USCP") surveillance video as he crawled through a broken window adjacent to the Senate Wing Doors and entered the Capitol. *See* Images 6 and 7 and Video Exhibit 2.

Image 6



Image 7



By approximately 2:17 p.m., Bochene had traveled from the Senate Wing Doors lobby to the Brumidi Corridor, still carrying the large rectangular object. *See* Image 8.

Image 8



At approximately 2:20 p.m., Senators and House Members began evacuating their respective chambers.  The members and their staff took shelter behind closed doors inside the Capitol.  At approximately 2:21 p.m., Bochene, circled in yellow, was captured by USCP video inside the Ohio Clock Corridor of the Capitol, *see* Image 9, and recorded a video, *see* Video Exhibit 3.

Image 9



At 2:28 p.m., Bochene was photographed standing outside the office of the Majority Whip of the United States Senate. *See* Image 10.

Image 10



Bochene, circled in red in Image 11, remained in the Capitol until approximately 2:31 p.m., when he exited through the Senate Carriage doorway. In total, Bochene spent approximately 17 minutes inside the Capitol.

Image 11



On January 6, 2021, Bochene telephoned Witness #1 and said he was at the White House and was one of the first people inside the building. The telephone call occurred while Bochene was inside the Capitol.

*Social Media Posts*

After the attack on the Capitol on January 6, 2021, Bochene used Facebook to share his presence inside the Capitol and spread false information about the United States Government. He posted images of himself inside the Capitol on January 6, 2021 on Facebook WeChat and boasted about his presence inside the Capitol on that day. *See* Image 11. In that post, he stated, "it was all a false flag. Insurrection act signed last night." As this Court is well aware, the January 6 riot was not a "false flag" operation planned by the Federal Bureau of Investigation ("FBI"). And no, President Trump did not invoke his powers under the Insurrection Act that day.

Image 11



*Bochene's FBI Interview*

On March 10, 2021, an FBI special agent and FBI task force officer conducted a voluntary interview of Bochene at his residence in New Hartford, New York.  He admitted that he entered the Capitol building on January 6, 2021.  He also invited the agent and officer to enter his residence to view a video he recorded while inside the Capitol.  *See* Video Exhibit 3.  The video is approximately three minutes long and appears to have been recorded in the same setting as depicted in Image 8.  Bochene identified himself and his voice in the video.

At no time during the interview did Bochene express remorse for his criminal conduct.

*The Charges and Plea Agreement*

On June 21, 2021, the United States charged Bochene by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On August 24, 2023, pursuant to a plea agreement, Bochene pleaded guilty to Count One of the Information, charging him with a violation of 18 U.S.C. § 1752(a)(1). By plea agreement, Bochene agreed to pay $500 in restitution to the Architect of the Capitol.

**III.    Statutory Penalties**

Bochene now faces a sentencing for violating 18 U.S.C. § 1752(a)(1). As noted by the plea agreement and the U.S. Probation Office, Bochene faces up to six months of imprisonment and a fine of up to $5,000. Bochene must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

**IV.    The Sentencing Guidelines and Guidelines Analysis**

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

According to the Presentence Investigation Report ("PSR"), the U.S. Probation Office calculated defendant Bochene's offense level under the Sentencing Guidelines as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. §2B2.3(a)) | 4 |
| Specific Offense Characteristics (U.S.S.G. §2B2.3(b)(1)(A)(vii)) | 2 |
| Acceptance of Responsibility (U.S.S.G. §3E1.1(a)) | -2 |
| Total Adjusted Offense Level | 4 |

*See* PSR at ¶¶ 27-36.

The Probation Office calculated defendant Bochene's criminal history as a category I. PSR at ¶ 40. Accordingly, the Probation Office calculated Bochene's total adjusted offense level, after acceptance, at 4, and his corresponding Guidelines imprisonment range at zero to six months' imprisonment. PSR at ¶ 84. Bochene's plea agreement contains an agreed-upon Guidelines' calculation that mirrors the Probation Office's calculation.

Even though Bochene has no criminal history points, he is no stranger to the criminal justice system, as discussed below in paragraph V., subparagraph B of this memorandum.

Recent amendments to the Sentencing Guidelines for 2023 include a new guideline, U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria. Section 4C1.1 will be in effect at the time of sentencing in this matter, but was not considered at the time the parties entered into the plea agreement.

Section 4C1.1 does not apply in this case because of Bochene's personal use of violence against property, i.e., the window that he attempted to smash with the rectangular object. In the manner that he used it, that object was also a dangerous weapon as broadly defined in U.S.S.G. 1B1.1, cmt. n.1. The government is aware of at least two cases in which courts have rejected the application of § 4C1.1 to January 6 defendants who engaged in violence, *United States v. Gundersen*, 21-cr-137 (RC) and *United States v. Baquero*, 21-cr-702 (JEB).

The Court should not apply § 4C1.1 here for the further reason that the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the

11

certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. See, e.g., *United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption.  Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions"). The government is not aware of any judge in a January 6 case issuing a lower sentence than it would otherwise have imposed based on § 4C1.1 and the court specifically rejected such a request in *United States v. Nassif*, 21-cr-421 (JDB), where the defendant was convicted of violations of 18 U.S.C. §§ 1752(a)(1) and 1752(a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and 5104(e)(2)(G).

Moreover, the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. See U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants

who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack.

Due to the unique nature of the January 6 mob, the harms caused by the January 6 riot, and the significant need to deter future mob violence, the government submits that even if the Court finds that § 4C1.1 applies, the Court should nevertheless vary upwards by two levels to counter any reduction in offense level. Such treatment would recognize the unique nature of the criminal events of January 6, 2021, coupled with the overwhelming need to ensure future deterrence, despite a person's limited criminal history.

To avoid unnecessary litigation, if the court declines to apply § 4C1.1, the government requests that the Court make clear at sentencing that it would have imposed the same sentence regardless of whether § 4C1.1 applies. Even if this Court were to apply § 4C1.1 and adjust the offense level from 4 to 2, the applicable Guidelines range would not change. It would remain 0-6 months. See U.S.S.G., Ch. 5, Part A (Sentencing Table).

Finally, while the Court must consider the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court knows, the government has charged a considerable number of persons with crimes based on the January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. To reflect Congress's will—the same Congress that served as a backdrop to this criminal incursion—the Guidelines are a powerful driver of consistency and fairness.

V.      **Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of the sentence of 90 days' imprisonment.

A.  **The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing defendant Bochene's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Bochene, the absence of violent or destructive acts is not a mitigating factor.  Had defendant Bochene engaged in such conduct, such as breaking the window with the large rectangular object, he would have faced additional criminal charges.

It is undisputed that on January 6, Bochene entered and remained inside the  restricted Capitol Building without authorization. The other important factors in his case are his demonstrated intent to either do damage to the Capitol by striking a window with the large, rectangular object multiple times,  and entering the Capitol through a broken window a minute after the initial breach by other rioters.[2]  He then engaged in an unguided journey inside the Capitol for approximately 17 minutes.

---

[2]  While Bochene may have anticipated that there would be violence at the Capitol and brought the large, rectangular object to use as a defensive shield, he used the object as a weapon rather than a shield. Moreover, Bochene has never provided a reasonable explanation for his possession of the

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  Bochene's History and Characteristics

Bochene is a 42-year-old resident of New Hartford, New York.  Since July 1, 2021, this Court held approximately 16 status conferences during which Bochene shared many of his personal details, including his employment as a long-haul truck driver, fatherhood, and thoughts and opinions.

Bochene has two prior convictions as an adult in New Jersey state court: for a drug-trafficking offense for which he was sentenced to three years' probation in 1999, PSR ¶ 39; and for larceny, for which was sentenced to three years' probation in 1991, PSR ¶ 38.

Additionally, Bochene is currently facing charges of Third-Degree Assault Causing Physical Injury and Endangering the Welfare of a Child in New York state court.  He was arrested on this charge on May 4 of this year, while on release from the charges in this case. PSR ¶ 44. On May 24 of this year, a temporary order of protection was issued against him by the New York court. Id. According to the information contained in a domestic incident report, Bochene hit his daughter (age not reflected in the PSR) twice in the face in her bedroom and dragged her off her bed. The daughter then bit Bochene, and he pushed her head into a side table, causing a laceration to her head. She called 911 and was transported to a hospital for medical treatment, and Bochene was arrested. *Id.*    During an April 3, 2023 status conference, Bochene informed the Court that he was residing with his teenage daughter.  At no time did Bochene mention his marital status or that he

---

object, identified what the object was and where he got it from, or articulated a legitimate reason for striking the window to the Capitol four times with the object.  The government is not aware of any violent or destructive activity engaged in by defendant Bochene inside the Capitol on January 6.

resided with his wife.  According to the May 24, 2023 Domestic Incident Report referenced in paragraph 44 of the PSR and related documents, the mother of Bochene's daughter was residing in China at the time of the domestic incident that occurred between Bochene and his daughter.

During several status conferences, Bochene informed the Court that he was a long-haul truck driver.  He informed the Probation Office that from 2019 until the date of his arrest on August 2, 2023, he worked for Swift Trucking.  PSR ¶¶ 73-74.  However, during the April 3, 2023 status conference, the government recalls that Bochene informed the Court that he was unemployed. On July 7, 2023, an FBI agent attempted to locate Bochene at his home in New Hartford, New York and spoke to his neighbor. The neighbor shared their opinion that Bochene was unemployed because he usually left the home early in the morning and returned at noon.  Bochene did not authorize the Probation Office to obtain employment information from any employer, so the representations that he made to the Probation Office are unconfirmed.

As noted above, Bochene was convicted in 1999 in New Jersey state court of drug-trafficking. PSR ¶ As set forth in the PSR, the Probation Officer for this case discovered that Bochene reported to the probation officer in the New Jersey state court case in March 1999 that he was enlisted in the United States Marine Corps from 1989 to 1991. Now, however, Bochene admitted to the Probation Officer in this case that he did not serve in the United States military. PSR ¶ 72. At the very least, this Court should question Bochene at the sentencing hearing about the apparent discrepancy in his self-reports about his military service, if any.

Bochene has also failed to abide by this Court's orders in this case. As the Court is aware, Bochene has requested to represent himself in this matter. On May 20, 2022, the Court granted that request and appointed stand-by counsel. Thereafter,  Bochene represented himself during five of the sixteen status conferences in this case.  In April 2023, the Court obtained an opinion from a

16

medical professional that Bochene possessed the ability to understand the nature and consequences of the proceedings against him and to assist in the preparation of his defense. However, Bochene ignored this Court's May 2, 2023 Order, directing him to file a notice with the Court on or before May 21, 2023 indicating whether he would be ready to proceed with a trial scheduled to commence on August 7, 2023. Bochene also disregarded this Court's July 4, 2023 Order, directing him to inform the Court on or before July 10, 2023 if he wanted a July 18, 2023 pretrial conference to proceed via Zoom of in person. Bochene then failed to appear at the pretrial conference on July 18, 2023, despite counsel for the government sending him emails on July 6, and July 14, 2023, and an FBI agent engaging in a face-to-face conversation with Bochene on July 7, 2023 about the Court's July 4, 2023 Order. Bochene's conduct led the Court to issue a warrant for his arrest on July 18, 2023. Bochene was arrested on that warrant on August 2, 2023. He has been held in custody pending the date of his sentencing hearing to ensure his appearance.

### C.   The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

As stated previously, defendant Bochene demonstrated to this Court that he lacks respect for the law by failing to comply with the Court's Orders. But, for that contemptuous conduct, the government would have recommended a lesser term of incarceration.

**D.  The Need for the Sentence to Afford Adequate Deterrence**

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Bochene's actions during the riot demonstrate the need for specific deterrence. For whatever reason, he equipped himself with a large, rectangular object before he arrived on the west front of the Capitol Building.  Then, he repeatedly swung the object at a Capitol window before he carried it into the Capitol.  He recorded his presence both outside and inside the Capitol. Both on January 6 and after, he bragged about being present inside the Capitol and part of the riot. He demonstrated no real recognition of wrongdoing until he pled guilty and accepted responsibility.

With the 2024 presidential election approaching, a possible rematch of the 2020

18

Presidential election on the horizon, and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously.   The recommended sentence will hopefully deter Bochene from repeating his criminal conduct.

### E.   The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Bochene based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Bochene has pleaded guilty to Count One of the Information, charging him with Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1).  This offense is a Class A misdemeanor. 18 U.S.C. § 3559.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

Owing to the unique aggravators here of Bochene attempting to break a window in the Upper West Terrace, traveling extensively throughout the Capitol building, boasting about being

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

one the first rioters to breach the Capitol, claiming that the January 6 was a "false flag" operation and refusing to demonstrate remorse, and contemptuous conduct towards the Court, there is a dearth of comparable cases. This Court issued a custodial sentence in another § 1752(a)(1) case, *United States v. Phillip Vogel*, 21-cr-289 (RDM), in which the defendant and a codefendant stole hundreds of dollars of personal protective equipment ("PPE") from at least three different areas in the Capitol; entered the Senate Gallery; filmed and posted a video of rioters, wore face masks in part to conceal their identities. Vogel pleaded guilty to violating 18 U.S.C. § 1752(a)(1) and (a)(2) and 18 U.S.C. § 641 (for theft of government property). This Court sentenced Vogel to 30 days' incarceration. Bochene's conduct, attempting to break the window on the Capitol building, carrying the object he used for that purpose into the Capitol was worse than Vogel's.

In *United States v. James Horning*, 21-cr-275 (ABJ), the defendant bragged about smoking marijuana inside the U.S. Capitol building on January 6, climbed the exterior scaffolding on the West Front of the Capitol Building, displayed no remorse for his unlawful conduct on January 6. Indeed, he stated he was proud to have been there. Like Bochene, Horning did not comply with the conditions of his release, although not as contemptuously as Bochene did. While on release in that case, Horning was convicted of unlawful possession of marijuana. Horning pleaded guilty to violating 18 U.S.C. § 1752(a)(1), and Judge Berman Jackson sentenced him to 30 days' incarceration and 12 months' supervised release. Horning's attempts to break a window of the Capitol building and carrying the large object he used for that purpose into the building make his conduct significantly worse than Horning's. Unlike Bochene, Horning's failure to comply with conditions of release did not cause the court to issue a bench warrant and have him detained.

In *United States v. O'Brien*, 21-cr-633 (RCL), the defendant entered the Capitol building despite being aware that rioters used force to enter the building. O'Brien penetrated the Capitol

all the way to the Speaker's office suite. O'Brien spent approximately 21 minutes inside the building – a few minutes more than Bochene did.  After January 6, O'Brien demonstrated a lack of remorse by stating "no regrets" on Facebook.  Like Bochene, O'Brien had been convicted of two prior misdemeanors.  Judge Lamberth sentenced O'Brien to 90 days of incarceration after he pled guilty to one count of violating 18 U.S.C. § 1752(a)(1).

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## VI.     Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that defendant Bochene must pay $500 in restitution, which reflects his part the role he played in the riot on January 6.[5] Plea Agreement at ¶ 14. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.*   Defendant Bochene's restitution payment must be

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 107.

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence defendant Bochene to 90 days' imprisonment, one year of supervised release, and 60 hours of community service.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Bochene's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

<div style="margin-left:40%;">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    <u>s/ ANITA EVE</u>
ANITA EVE
Assistant United States Attorney
PA Bar. No. 45519

</div>

United States v. Eric J. Bochene

Video Exhibits

Video Exhibit 1: Upper West Terrace – Bochene pre-entry

Video Exhibit 2: Senate Wing Foyer – Bochene entry

Video Exhibit 3: Bochene video entitled "2021-Staged Storming Event-001"

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically, is available for viewing and

downloading from the Electronic Case Filing system, and was served by electronic filing upon:

John Gilsenan, Esquire
John_gilsenan@fd.org


*Counsel for Eric J. Bochene*


 s/ Anita Eve
ANITA EVE
Assistant United States Attorney


Date: October 26, 2023